UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **GWENN FONTANA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 2:14-cv-00090** |
| | ) | **Judge Sharp** |
| **v.** | ) | |
| | ) | |
| **CAROLYN W. COLVIN** | ) | |
| **Acting Commissioner of** | ) | |
| **Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM

Pending before the Court is Plaintiff's *Motion for Judgment on the Administrative Record* (Docket Entry No. 12). The motion has been fully briefed by the parties.

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's claim for disability benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-434. Upon review of the administrative record as a whole and consideration of the parties' filings, the Court finds that the Commissioner's determination that Plaintiff is not disabled under the Act is supported by substantial evidence in the record as required by 42 U.S.C. § 405(g). Plaintiff's motion will be denied.

## I. INTRODUCTION

Plaintiff filed an application for disability benefits on April 1, 2011. The claim was initially denied on June 17, 2011 and upon reconsideration on September 15, 2011. On November 9, 2011, Plaintiff timely requested a hearing, which was held on February 6, 2013. The ALJ signed a Notice of Decision-Unfavorable, which was mailed to Plaintiff of April 5,

2013.  Plaintiff timely filed an appeal with the Appeals Council, which issued a written notice of

denial on July 25, 2014, thereby making the ALJ's decision the final decision of the

Commissioner.  This civil action was thereafter timely filed, and the Court has jurisdiction.  42

U.S.C. § 405(g).

## II. THE ALJ FIDNINGS

The ALJ issued an unfavorable decision on April 5, 2013.  (AR p. 7).  Based upon the

record, the ALJ made the following enumerated findings:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2005, but not thereafter.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of January 1, 2002 through her date last insured of December 31, 2005 (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, the claimant had the following severe impairments: diabetes mellitus, kidney disease and coronary artery disease (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform at least the full range of sedentary work as defined in 20 CFR 404.1567(a).

6. Through the date last insured, the claimant was capable of performing past relevant work as a senior research assistant.  This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant was not under a disability, as defined in the Social Security Act, at any time from January 1, 2002, the alleged onset date, through December 31, 2005, the date last insured (20 CFR 404.1520(f)).

(AR pp. 12-18).

## III. REVIEW OF THE RECORD

The following summary of the evidence of record is taken from Plaintiff's brief, Docket Entry No. 12-1 at pp. 1, 3-4).

Gwenn Fontana is a 59 year old citizen residing at 4935 Old Highway 52, Lafayette, TN 37083 (Transcript of the Record, hereinafter marked simply as a page number, 104). Her work experience was as a Research Associate in the medical field (122). She performed this work from 1980 until April 2000 (*Id.*). Mrs. Fontana earned a Bachelor's Degree in 1978. This was her highest level of education as of December 31, 2005, her date of last insured. After her disabilities prevented her from working, she was able to find an online graduate program that allowed her to work at her own pace and at irregular hours and has received a Masters Degree and PhD (38-39; 208). She could complete this program working only an hour or two per day from home and could stop at any time to attend to health issues (*Id.*).

\*\*\*

The medical record is replete with evidence that Mrs. Fontana suffered from various kidney diseases including nephrotic syndrome, which is a listed impairment (Listing 6.06). The extraordinary standards for a finding of disability at step 3 are not met, but the totality of the medical evidence supports Mrs. Fontana's testimony that her conditions precluded her from continuing to perform her past relevant work, and thus should have supported a finding of disability at both step 4 and step 5.

Her diagnoses are as follows:

Diabetes Mellitus (p. 279) (Dated 9-3-02)
Renal Failure (p. 428)
Diabetes with Renal Disease (50% loss) (p. 342) (Dated 2002)
Chronic Kidney Disease - Stage 4 (p. 567) - (Dated August 2006, but as it is "chronic" claimant would state that this is relevant to her condition by Dec. 31, 2005.
Coronary Artery Disease - Heart report dated November 9, 2004 shows her Heart Age as 75-80 when her actual age was 48. Moderate, multi-site atherosclerosis was found, as well (p. 384)

The record contains laboratory test results taken throughout the relevant time period and beyond. These results support the diagnoses above. Social Security considers the proteinuria, protein to creatinine, and serum albumin numbers for the condition of nephrotic syndrome (Listing 6.06). Micro albumin results relate specifically to diabetic nephropathy as stated on the document itself. Mrs. Fontana's results consistently fall far outside normal . . .

These tests are not selectively chosen. They represent important numbers that are drastically out of range of normal over the time that Mrs. Fontana could no longer work to her date of last insured. Other numbers such as BUN are also profoundly out of range of normal in the same tests (341, 344, 385, 387). These results support the conclusion by Dr. Odunusi that Mrs. Fontana's health had left her "incapacitated to function effectively" (391). Mrs. Fontana's testimony that she was fatigued frequently due to anemia, dizzy if standing, and often swollen and numb in the legs also is supported by this evidence (38).

Mrs. Fontana described her job as follows:

This job required a lot of physical activity and long periods of standing, usually in front of a lab bench performing experiments or performing analyses with various equipment. Often large numbers of samples or equipment had to be carried from one room to another, or to another floor. Constantly on the move. Much of the equipment used was spread out over an entire floor, or even parts of other floors. Boxes of supplies had to be shelved, waste delivered to appropriate depts., solvents and other chemicals in 4-liter bottles were lifted frequently.
(123)

Mrs. Fontana supervised 2-3 people, frequently carried 10 lbs and sometimes lifted 20 lbs (123).

## IV. DISCUSSION AND CONCLUSIONS OF LAW

### A. Standard of Review

This court reviews the final decision of the SSA to determine whether that agency's findings of fact are supported by substantial evidence in the record and whether the correct legal standards were applied. *Elam ex rel. Golay v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003). Substantial evidence has been defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). The Commissioner's decision must be affirmed if it is supported by substantial evidence, "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109

F.3d 270, 273 (6th Cir. 1997)); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)).

The Court must examine the entire record to determine if the Commissioner's findings are supported by substantial evidence. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir.1991). A reviewing court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court must accept the ALJ's explicit findings and final determination unless the record as a whole is without substantial evidence to support the ALJ's determination. 42 U.S.C. § 405(g). *See, e.g., Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984).

**B. Determining Disability at the Administrative Level**

The claimant has the ultimate burden of establishing her entitlement to benefits by proving her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d) (1)(A). The asserted impairment(s) must be demonstrated by medically acceptable clinical and laboratory diagnostic techniques. *See* 42 U.S.C. §§ 423(d)(3) and 1382c(a)(3)(D); 20 CFR §§ 404.1512(a), (c), 404.1513(d). "Substantial gainful activity" not only includes previous work performed by the claimant, but also, considering the claimant's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which the claimant lives, or whether a specific job vacancy exists, or whether the claimant would be hired if she applied. 42 U.S.C. § 423(d)(2)(A).

In the proceedings before the Social Security Administration, the Commissioner must employ a five-step, sequential evaluation process in considering the issue of the claimant's alleged disability. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001); *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must show that she is not engaged in "substantial gainful activity" at the time disability benefits are sought. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007); 20 CFR §§ 404.1520(b), 416.920(b). Second, the claimant must show that she suffers from a severe impairment that meets the twelve month durational requirement. 20 CFR §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). *See also Edwards v. Comm'r of Soc. Sec.*, 113 F. App'x 83, 85 (6th Cir. 2004). Third, if the claimant has satisfied the first two steps, the claimant is presumed disabled without further inquiry, regardless of age, education or work experience, if the impairment at issue either appears on the regulatory list of impairments that are of sufficient severity as to prevent any gainful employment or equals a listed impairment. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 CFR §§ 404.1520(d), 416.920(d). A claimant is not required to show the existence of a listed impairment in order to be found disabled, but such a showing results in an automatic finding of disability that ends the inquiry. *See Combs, supra*; *Blankenship v. Bowen*, 874 F.2d 1116, 1122 (6th Cir. 1989).

If the claimant's impairment does not render her presumptively disabled, the fourth step evaluates the claimant's residual functional capacity in relationship to her past relevant work. *Combs, supra*. "Residual functional capacity" ("RFC") is defined as "the most [the claimant] can still do despite [her] limitations." 20 CFR § 404.1545(a)(1). In determining a claimant's RFC, for purposes of the analysis required at steps four and five, the ALJ is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and

nonexertional, severe and nonsevere. *See* 42 U.S.C. §§ 423(d)(2)(B), (5)(B); *Foster v. Bowen*, 853 F.2d 483, 490 (6th Cir.1988). At the fourth step, the claimant has the burden of proving an inability to perform past relevant work or proving that a particular past job should not be considered relevant. *Cruse*, 502 F.3d at 539; *Jones*, 336 F.3d at 474. If the claimant cannot satisfy the burden at the fourth step, disability benefits must be denied because the claimant is not disabled. *Combs, supra*.

If a claimant is not presumed disabled but shows that past relevant work cannot be performed, the burden of production shifts at step five to the Commissioner to show that the claimant, in light of the claimant's RFC, age, education, and work experience, can perform other substantial gainful employment and that such employment exists in significant numbers in the national economy. *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (quoting*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997)). *See also Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). In order to rebut a *prima facie* case, the Commissioner must come forward with proof of the existence of other jobs a claimant can perform. *Longworth*, 402 F.3d at 595. *See also Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 528 (6th Cir. 1981), *cert. denied*, 461 U.S. 957, 103 S. Ct. 2428, 77 L. Ed. 2d 1315 (1983) (upholding the validity of the medical-vocational guidelines grid as a means for the Commissioner of carrying his burden under appropriate circumstances). Even if the claimant's impairments prevent the claimant from doing past relevant work, if other work exists in significant numbers in the national economy that the claimant can perform, the claimant is not disabled. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009). *See also Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028-29 (6th Cir. 1990); *Farris v. Sec'y of*

*Health & Human Servs.*, 773 F.2d 85, 88-89 (6th Cir. 1985); *Mowery v. Heckler*, 771 F.2d 966, 969-70 (6th Cir. 1985).

If the question of disability can be resolved at any point in the five-step sequential evaluation process, the claim is not reviewed further. 20 CFR § 404.1520(a)(4). *See also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (holding that resolution of a claim at step two of the evaluative process is appropriate in some circumstances).

### C. Plaintiff's Assertion of Error

Plaintiff disputes the ALJ's determination that (1) the severe impairments that she was found to have would not preclude her performance of her past relevant work experience through her date of last insured; (2) that her past relevant work was sedentary; and (3) she had the residual function capacity to perform the requirements of her past relevant work. (Docket Entry No. 12-1 at pp. 4-7). Plaintiff seeks reversal, or in the alternative, remand. Remand would be based on sentence four of 42 U.S.C. § 405(g). (*Id*. at 8).

Sentence four of 42 U.S.C. § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3). "In cases where there is an adequate record, the [Commissioner's] decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Additionally, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a claimant's entitlement

to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (1994).  Plaintiff's assertions of error are addressed below.

*1. The ALJ's determination in step two that the severe impairments that she was found to have would not preclude her performance of her past relevant work experience through her date of last insured*

Plaintiff contends that the ALJ erred at step two of the sequential evaluation.  In support, Plaintiff argues,

> The ALJ did find that Mrs. Fontana had severe impairments (12).

> ***

> A finding that she had severe impairments seems to contradict a finding that such severe impairments would not preclude her performance of her past relevant work experience through her date of last insured, especially in light of Mrs. Fontana's testimony as outlined above as to the nature of her employment and the physical limitations she suffered and the doctor's conclusion based on the evidence that Mrs. Fontana was "incapacitated to function effectively" (391).

> ***

> Further, while the relevant time period in this case is January 1, 2002 through her date of last insured of December 31, 2005, the decision cites far more evidence from after said time period than during it. Despite looking beyond 2005 for justification to deny benefits, the decision ignores that by August 2006, Mrs. Fontana had been diagnosed with Stage 4 Chronic Kidney Disease (567). By 2010, Mrs. Fontana was placed on the kidney transplant list (now inactive due to cysts on her pancreas) (40) and has been on almost daily dialysis for years (44-45).

(Docket Entry No. 12-1 at pp. 4-5).

A severe impairment is an impairment that more than minimally impacts an individual's ability to work. See 20 C.F.R. § 404.1521 (severe impairments); SSR 96-3p.  The impairment must significantly limit Plaintiff's ability to perform basic work activities. *See id.* (citing 20 C.F.R. §§ 404.1509, 404. 521).

Plaintiff is correct.  The ALJ did find that Plaintiff had severe impairments.  *See* (AR at

12).  However, as the ALJ explained, even if that determination is made, he must then proceed to

the next steps in the evaluation.  In this instance, the ALJ ensued and found the following:

> Through the last date of insured, the claimant did not have an impairment or
> combination of impairments that met or medically equaled the severity of one of
> the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR
> 404.1520(d), 404.1525 and 404.1526).
>
> ***
>
> Through the last date of insured, the claimant was capable of performing past
> relevant work as a senior research assistant.

(AR pp. 12, 18).  The Court finds the ALJ proceeded properly in his determination in step two

and the record as a whole regarding Plaintiff's impairments – and that these findings are

supported by substantial evidence.

*2. The ALJ's determination that her past relevant work was sedentary*

Plaintiff next argues that the ALJ mischaracterized her past relevant work at step four of

the sequential evaluation, and that it was actually more strenuous than the sedentary job

identified by the ALJ.[1]  Plaintiff claims that there are other jobs in the Dictionary of

Occupational Titles that would be more suitable to identify her past relevant work.  For this

argument, she contends,

> [] a review of the evidence is that Mrs. Fontana was not considered a Research
> Assistant as this is defined. The physical activity and supervision of others
> described by her (123) would coincide more with a Chemical Laboratory
> Technician, which is described as more active work:
>
> > Conducts chemical and physical laboratory tests of solid materials,
> > liquids, and gases, and analyzes test data for variety of purposes, such as

---

[1] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying
articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which
involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.
Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."
20 C.F.R. § 404.1567 (defining the exertional categories).

research, product development, quality control, criminal investigation, and establishing standards, involving experimental, theoretical, or practical application of chemistry and related sciences: Sets up laboratory equipment and instrumentation required for tests, research, or process control. Tests and analyzes products, such as food, drugs, fertilizers, plastics, paints, detergents, paper, petroleum, and cement, to determine strength, stability, purity, chemical content, and other characteristics. Tests and analyzes materials and substances, such as ores, minerals, gases, soil, water, and pollutants. Documents results of tests and analyses. May prepare chemical solutions for use in processing materials, following standardized formulas or experimental procedures. May test and analyze radioactive and biological materials, applying knowledge of radiochemical procedures, emission spectrometry, and related techniques. (DOT 022.261-010)

It appears that the error in determining the type of relevant work first derived from Mrs. Fontana's job title not being found in the Dictionary of Occupational Titles. The vocational expert found "Senior Research Investigator" in the book and referred to Mrs. Fontana as that (46). Senior Research Investigator follows the job description of Mrs. Fontana's supervisor whose job was mostly performed seated at a desk (206), but Mrs. Fontana's work clearly was not sedentary (123).

(Docket Entry No. 12-1 at pp. 6-7).

Defendant counters,

[S]ubstantial evidence supports the ALJ's finding that Plaintiff performed a "sedentary" type job, as that job was performed in the national economy (Tr. 18).

When an individual's ability is assessed at step four of the sequential evaluation, the ALJ determines whether or not they can perform their past relevant work. See 20 C.F.R. § 404.1520 (sequential evaluation). If an individual is able to perform her past relevant work, she is not disabled. See 20 C.F.R. § 404.1520 (sequential evaluation; not disabled at step four if able to perform past work; 20 C.F.R. § 404.1560(b) (defining past relevant work and the process for the determination). The regulation specifically states that a vocational expert can testify to work "as the claimant actually performed it or as generally performed in the national economy." 20 C.F.R. § 404.1560(b)(2).

Here, the ALJ relied on vocational expert testimony to establish the characterization of Plaintiff's past relevant work. The witness specifically testified that Plaintiff worked in the past as a senior research investigator, "which is classified as sedentary, unskilled work" (Tr. 46). Plaintiff's representative questioned the witness on this, stating that per Plaintiff's description of the job it was not a sedentary job (Tr. 47). The vocational expert clarified that the job was

sedentary as typically performed in the national economy, but not as performed by Plaintiff (Tr. 47).

The ALJ may rely on the testimony of the vocational expert (VE) witness, as was done here. "A VE's testimony is not required when the ALJ determines that a claimant is not disabled at step four of the sequential evaluation." D'Angelo v. Comm'r of Soc. Sec., 475 F. Supp. 2d 716, 724 (W.D. Mich. 2007) (citing Banks v. Massanari, 258 F.3d 820, 827 (8th Cir. 2001); 20 C.F.R. § 404.1560 ("When we will consider your vocational background."). Although a vocational expert witness is not required at the fourth step of the sequential evaluation process, the ALJ in this case properly used vocational expert testimony to assist in making a decision concerning Plaintiff's ability to perform his past relevant work as provided for by the regulations. See 20 C.F.R. § 404.1560(b).

The ALJ properly relied on vocational expert testimony to establish Plaintiff's past relevant work as a sedentary type job. This finding is proper because past relevant work is not just the job as it was performed by Plaintiff, it is also the job as it is typically performed in the national economy. See 20 C.F.R. § 404.1560(b)(2); SSR 82-61; SSR 82-62. The regulation specifically states; "A vocational expert or specialist may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy." Id.

(Docket Entry No. 15 at pp. 5-6).

In the Sixth Circuit, an ALJ satisfies this duty if he or she asks the vocational expert whether their testimony is consistent with the DOT. *See Johnson v. Comm'r of Soc. Sec.,* 535 F. App'x 498, 508 (6th Cir. 2013) (citing SSR 00-4p and Martin v. Comm'r of Soc. Sec., 170 F. App'x 369, 374 (6th Cir. 2006)). "The fact, therefore, that the VE and the DOT may use different terminology to describe employment positions does not establish that a conflict exists between these sources of evidence." *See Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601,605 (6th Cir. 2009). By evaluating the testimony of the vocational expert, the DOT, and Plaintiff's description of her job duties, the ALJ found the following:

As categorized by vocational expert testimony and consistent with the job information found in the DOT (SSR 00-4p), the claimant has skilled, sedentary past relevant work experience as a senior research assistant.

In comparing the claimant's residual functional capacity with physical and mental demands of this work, I find that the claimant was able to perform it as generally performed. I note that the claimant described this job as requiring that she walk for four hours during the workday, stand for four hours during a workday, and lift up to twenty pounds (Exhibit E). I accept the testimony of the vocational expert that the job as normally performed requires only sedentary exertion.

(AR p. 18). The Court finds the ALJ's assessment of Plaintiff's residual functional capacity in relationship to her past relevant work is supported by substantial evidence.

*3. The ALJ's Evaluation of the Residual Functional Capacity*

Plaintiff's third and final argument is that the ALJ erred in evaluating her residual functional capacity. Specifically, Plaintiff contends,

Even if her work were deemed consistent with a Research Assistant II, Mrs. Fontana's testimony, the medical evidence, the conclusion of the doctor based on this medical evidence, and her diagnosis shortly after the date of last insured of Chronic Kidney Disease - Stage 4 all overwhelming support Mrs. Fontana's assertion that she was unable to perform the requirements of her past relevant work. It is also clear that had the ALJ proceeded to Step 5, that Mrs. Fontana was unable to perform other work considering her residual functional capacity.

(Docket Entry No. 12-1 at pp. 7-8).

The ALJ found that Plaintiff "through the date last insured, [] had the residual functional capacity to perform at least the full range of sedentary work" as defined in 20 C.F.R. § 404.1567(a). (AR at pp. 17-18). In making the finding, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based upon the requirements of 20 CFR 404.1529 . . . and 20 CFR 404.1527." (*Id*.). The ALJ noted the following:

The claimant alleges disability due to type I diabetes mellitus, brittle, with hypoglycemic events; chronic renal failure; hypertension; coronary artery disease; diabetic neuropathy; orthostatic hypotension; cataracts, left and right; homocysteinemia; hyperlipidemia; and pericarditis. At a height of 5 foot 7 inches, the claimant weighs 125 pounds. She has a college education (four or more years of college). She worked from 1980 to April 2000 as a senior research associate. She states that she ceased working when she got married because she

thought her self-employed husband could support her. She states that she was not able to return to work in 2001 when she would have liked to. She states managing her diabetes became a full time job and with orthostatic hypertension, it was particularly difficult to even be on her feet and not feel like she was about to pass out (Exhibit 2E).

\*\*\*

In summary, the above residual functional assessment is supported by objective evidence of record. . .I find that the claimant could perform at least sedentary work through her date last insured December 31, 2005.

(AR p. 18). After a thorough review of Plaintiff's administrative record, the Court finds the

decision of the ALJ regarding Plaintiff's residual functional capacity is supported by substantial

evidence.

## V. CONCLUSION

In sum, the Court concludes that the findings of the ALJ are supported by substantial

evidence on the record as a whole, and are free from legal error. With such support, the ALJ's

decision must stand, even if the record also contains substantial evidence that would support the

opposite conclusion. *E.g., Longworth c. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005).

For all of the reasons stated, the Court will deny Plaintiff's *Motion for Judgment on the*

*Administrative Record* (Docket Entry No. 12).

An appropriate Order shall be entered.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE